**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PUBLIC INTEREST LAW INITIATIVE,<br><br>Plaintiff,<br><br>v.<br><br>PILNET, formerly known as PUBLIC INTEREST LAW INSTITUTE,<br><br>Defendant. | Case No. 09 C 6742<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Public Interest Law Initiative ("PILI") filed a five count complaint alleging both State and Federal claims based on defendant PILnet, formerly known as Public Interest Law Institute ("PILnet") infringement of PILI's trademark. PILnet filed a counterclaim seeking declaratory judgment and alleging breach of contract based on a Release and Coexistence Agreement allegedly executed by the parties. PILnet moves for partial summary judgment on Count II of PILnet's Counterclaim, the first four counts of the Amended Complaint to the extent that those counts seek relief for conduct expressly authorized by the terms of the parties' agreement, and on PILI's allegations of irreparable harm for lack of evidentiary support. For the reasons that follow, this Court denies PILnet's motion for summary judgment.

**Background**

Except where noted, the following facts are undisputed. Plaintiff, Public Interest Law Initiative is an Illinois non-profit organization founded in 1977 with its principal place of business in Chicago, Illinois. Defendant PILnet began as a project called Public Interest Law Initiative in Transitional Societies at Columbia Law School in New York, New York, in 1997.

Later, Public Interest Law Initiative in Transitional Societies became an independent non-profit corporation headquartered in New York, New York.

On November 9, 2006, Edwin Rekosh, the executive director of PILnet contacted Susan Curry, who was then the executive director of PILI. Rekosh and Curry agreed to discuss the "two PILIs" in a telephone conference on November 16, 2006. Rekosh and Curry discussed a name change for defendant. The parties dispute whether PILI insisted at this time that PILnet change its acronym ("PILI") and logo. (Original PILI's Response to Second PILI's Rule 56.1 Statement "Resp. to SOF", ¶7.) PILnet states that an agreement was reached in December 2006 as to several issues, including PILnet's first name change to Public Interest Law Institute, PILnet's use of the PILI acronym, and a new logo. (PILnet's Statement of Undisputed Material Facts "SOF", ¶8).

On January 23, 2007, Rekosh provided Curry and PILI's attorney, Jordan Heinz of Kirkland & Ellis LLP, with a draft Release and Coexistence Agreement that had been prepared by PILnet's counsel at Weil, Gotshal & Manges LLP. (SOF at ¶9.) Rekosh also sent a proposal for a new logo. (*Id*.) On February 10, 2007, PILnet filed a Certificate of Amendment of its Certificate of Incorporation with the State of New York Department of State in order to officially change its name from Public Interest Law Initiative to Public Interest Law Institute. (*Id.* at ¶14.) PILI believed PILnet changed its name in response to PILI's concerns that they had the same name. (*Id.* at ¶15.) PILI disputes that the name change resulted from an agreement as PILnet implies. (Resp. to SOF at ¶15.) PILnet and PILI continued to discuss changes proposed amendments to PILnet's logo and website. The parties implemented corresponding links on their websites directing visitors to one another's website.

On March 15, 2007, PILI's counsel sent PILnet's counsel another draft of the Release

and Coexistence Agreement. (SOF at ¶19.) On March 28, 2007, counsel for PILnet informed counsel for PILI that she wanted to schedule a call to discuss the revised drafts. (*Id.*) On August 16, 2007, Rekosh sent PILnet's Board of Directors the draft of the Release and Coexistence Agreement and informed the Board that "[w]e now have a final version (hopefully) of a trademark release agreement with PILI-Chicago that we understand is acceptable to them (they have not yet seen this version, but have agreed with the changes in principle)." (SOF, Ex. Z.) PILnet Board members authorized Rekosh to execute the draft of the Release and Coexistence Agreement. (SOF at ¶23.) On August 17, 2007, Rekosh provided Curry and counsel for PILI with what he stated was a "(hopefully) final draft of our trademark mutual release… my board has now thoroughly reviewed this version, and has given its go ahead. I believe it captures all points we agreed. Let me know if there is anything still needing discussion. It would be great to finally get this thing executed!" (SOF, Ex. BB.) PILI disputes that the draft Agreement sent on August 17, 2007, contained the points agreed to by the parties, specifically the scope of the disclaimer requirement. (Resp. to SOF at ¶24.)

  On October 1, 2007, Curry signed the Release and Coexistence Agreement, with authority to do so. (SOF at ¶27.) PILI disputes that the version of the Agreement signed by Curry reflected all material points to which the parties agreed, citing an agreement with respect to a disclaimer of affiliation that was not included in the August 17, 2007, draft signed by Curry. PILI believes the disclaimer was an outstanding issue that was never fully resolved. (Resp. to SOF at ¶27.) On October 5, 2007, counsel for PILI sent counsel for PILnet the version of the Release and Coexistence Agreement signed by Curry, and stated in the accompanying email, "Enclosed please find the latest Release and Coexistence Agreement executed by my client. After you have obtained your client's signature, please return a copy of the fully-executed

agreement to my attention. It was a pleasure working with you. Please contact me if you have any questions concerning the foregoing." (SOF, Ex. EE.)

On October 16, 2007, counsel for PILI emailed counsel for PILnet informing her that a Columbia Law School website was continuing to refer to PILnet as the "Public Interest Law Initiative" and stating: "We are also still awaiting the fully-executed release. Do you have an estimate as to when we might receive it?" (SOF, Ex. FF.) Counsel for PILnet replied, "I will look into this." (*Id.*)

On October 19, 2007, counsel for PILnet forwarded the version of the Release and Coexistence Agreement to Rekosh at the PILnet office in Budapest, Hungary. (SOF at ¶33.) PILnet states that Rekosh countersigned the Release and Coexistence Agreement on behalf of PILnet on October 29, 2007. (*Id.* at ¶34.) PILI disputes that Rekosh countersigned the Agreement on that date since there is no evidence to support it beyond the date on the document and Rekosh's own testimony. PILI states in dispute that it's forensic ink expert, Gerald LaPorte, could not determine "whether or not the Edwin Rekosh signature was produced on October 29, 2007," and noted that the "absence of findings to indicate that the signature was not created on the purported date should not be construed as supporting the premise that it was in fact signed on the date indicated." (Resp. to SOF at ¶34, Ex. 22 at 5.) PILI also refers to the minutes of the PILnet Board meeting following Rekosh allegedly signing the Agreement, which make no mention of the execution of the Agreement. (*Id*. at ¶34, Ex. 23.) PILI states that the effective date of November 1, 2007, came and went with no indication from PILnet that it assented to the draft Agreement signed by Curry.

PILnet states that it sent the fully executed Agreement to PILnet's counsel on Novem 5, 2007. (SOF at ¶37.) The testimony cited states that Rekosh, "signed it and gave it to his assistant

and asked her to mail it back." (SOF, Ex. C. at 111:7-11.) PILI states that Curry signed only one original and the record shows that Rekosh's assistant put it in PILnet's files after Rekosh purportedly signed it. (Resp. to SOF at ¶34, Ex. 1, 111:21-112:4.)

PILI disputes PILnets representation that it took action in conformity with the Release and Coexistence Agreement. (*Id.* at ¶46.) PILI states with record citations that PILnet took numerous actions completely inconsistent with the terms of the purported agreement. (*Id.*) PILI filed the instant lawsuit on October 26, 2009. PILnet sent PILI a copy of the countersigned Release and Coexistence Agreement on November 11, 2009.

**Legal Standard**

Summary judgment is appropriate when the pleadings and all the submissions on file demonstrate the absence of any genuine issues of material fact, so that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c); *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 823 (7th Cir. 2011). When considering summary judgment motion, the Court views all the evidence and reasonable inferences in favor of the non-moving party. The party opposing summary judgment may not "rest on the allegations in the pleadings," but must present "evidentiary material which, if reduced to admissible evidence, may allow him to carry his burden of proof." *Yannacopoulos*, 652 F.3d at 823 (quoting *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1299 (7th Cir. 1992)).

**Discussion**

PILnet's summary judgment motion is based on the proffered Release and Coexistence Agreement, which PILnet asserts precludes PILI's claims in Counts I-IV of the First Amended Complaint. PILI disputes that the Release and Coexistence Agreement was ever effectuated since it never received notice that PILnet signed the document. PILnet claims the document was

signed by its officer on October 29, 2007, and there is no delivery requirement to be effective. Therefore, PILnet asserts that it became effective on November 1, 2007.

As the party seeking enforcement of the agreement, PILnet has the burden of establishing the existence of an agreement. *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 9 Ill. App. 3d 102, 108, 291 N.E.2d 836, 840 (Ill. App. Ct. 1973). It is well established that to form a contract there must be offer, acceptance and consideration.[1] *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 404 Ill. App. 3d 438, 449, 934 N.E.2d 679, 689 (Ill. App. Ct. 2010). "There is no acceptance, however, until the offeree notifies the offeror of the acceptance or at least employs reasonable diligence in attempting to do so." *Restatement (Second) of Contracts*, §56 (1981); *Semanta v. Tylman*, 230 Ill. App. 3d 701, 705, 595 N.E.2d 688, 692 (Ill. App. Ct. 1992).

Here, there was clearly an offer made when PILI's officer Susan Curry signed the draft and returned it to PILnet with the effective date filled in. Yet, there was no acceptance made by PILnet. Although the record shows that Rekosh signed the document on PILnet's behalf, PILnet never notified PILI that it had done so and there is no way to know when the contract was signed. PILnet argues that the agreement contained no delivery requirement and thus it was not required to send the signed version back to PILI in order to effectuate the contract. Nevertheless, PILnet must have communicated in some manner its assent to the signed version otherwise PILI could not have known whether PILnet accepted it as the final version.

The record shows that PILI attempted to obtain some sort of notification from PILnet that the contract had been signed on at least two occasions via email. When PILI sent PILnet the

---

[1] Contract issues such as the one involved here are state-law claims. Federal courts apply the choice of law principles of the forum state. *Kafka v. Bellevue Corp.*, 999 F.2d 1117, 1121 (7th Cir. 1993). Illinois applies the law that the parties "understood would govern the case."*Id.* Here, PILnet asserts that New York law would govern the agreement as provided in the document. Nevertheless, both parties refer to Illinois law in their briefs, though PILnet also cites New York law. Accordingly, this Court will apply Illinois contract law.

signed document, it requested a countersigned copy once PILnet's counsel obtained her client's signature. Ten days later, PILI again inquired about the Agreement, but the only answer was from PILnet's counsel, stating "I will look into it." When PILI never received a countersigned copy of the agreement or any indication from PILnet that it had been signed, it was reasonable for PILI to assume the offer had been rejected and the document never executed. Nothing in the record shows that PILI ever received notice from PILnet that it assented to the draft agreement signed by PILI. Indeed, it was not until after PILI filed the instant lawsuit that PILnet tendered a countersigned copy of the agreement. Taking the facts and all reasonable inferences in the light most favorable to PILI, this Court finds that the undisputed facts do not show that PILnet manifested its assent to the agreement as signed by PILI. Therefore, no contract was formed. Accordingly, PILnet is not entitled to judgment as a matter of law since the purported Release and Coexistence Agreement is the basis for PILnet's summary judgment motion.

**Conclusion**

Based on the foregoing, this Court finds that PILnet has failed to establish that a binding contract was formed between the parties that would preclude counts I to IV of the First Amended Complaint and support count I of the counterclaim. PILnet's motion for partial summary judgment is denied.

IT IS SO ORDERED.

Date:

Entered: _____
Sharon Johnson Coleman